UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,            CRIMINAL NO. 09-95(2) (PJS/JSM)

    Plaintiff,

v.                                      <u>REPORT AND RECOMMENDATION</u>

JESSIE ULYSSES BROWN

    Defendant.

    JANIE S. MAYERON, United States Magistrate Judge

    The above matter came on before the undersigned upon Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 24] and Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 25]. Thomas Hollenhorst, Assistant United States Attorney, appeared on behalf of the United States of America; Douglas Olson appeared on behalf of defendant Jessie Ulysses Brown who was personally present.

    This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(c).

    Based upon the pleadings, the pre-hearing submissions and post-hearing submissions, it is recommended that:

    1.     Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 24] be **DENIED**; and

2. Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 25] is **WITHDRAWN** based on the representation of defendant's counsel at the pretrial hearing on the underlying motions.

**I.    INTRODUCTION**

Defendant Jessie Ulysses Brown ("Brown") has been indicted for one count of conspiracy to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846 and one count of possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2.  See Indictment [Docket No. 7].

Brown has moved the Court for an order suppressing all evidence obtained as a result of the execution of two search warrants at a residence located in Minneapolis, Minnesota.  In particular, Brown seeks to suppress evidence obtained by virtue of a search warrant issued on March 19, 2009, (see Government Ex. 1), on grounds that this search warrant was issued without a sufficient showing of probable cause in the supporting affidavit, and was so deficient that the officers could not have reasonably relied upon it in good faith.  See Defendant's Memorandum in Support of Motion to Suppress Evidence Obtained as a Result of Search and Seizure ("Def.'s Mem.") at p. 1.  Brown also seeks the suppression of evidence gathered via a subsequent March 25, 2009 search warrant, (see Government Ex. 2), that was obtained after the officers gained access to the Minneapolis residence and discovered drugs in plain view pursuant to their execution of the initial March 19 warrant.  According to Brown, the

evidence seized as a result of the March 25 warrant was the "fruits" of the illegal warrant obtained on March 19, 2009. Id. Thus, this Court's analysis focuses on whether the March 19, 2009 search warrant application and affidavit contained sufficient probable cause to believe that contraband or evidence of a crime would be found at the Minneapolis residence.[1]

## II. FACTUAL BACKGROUND

The March 19, 2009 search warrant at issue for the Minneapolis residence, allowed law enforcement officers to search for documents, notes, papers, ledgers, pagers, cell phones, computers including hard drives, peripherals, removable storage media, and videotapes that showed activities of controlled substance distribution and that showed the name, addresses and phone numbers of possible sources or customers of controlled substances. See Government Ex. 1. The search warrant also allowed law enforcement officers to search for monies to show profit from the sale of controlled substances, and documents of identification that showed the constructive possession of items seized. Id.

The following information was provided in the supporting affidavit by Deputy Carolyn Donarski ("Deputy Donarski") to the search warrant application:

- Deputy Donarski spoke to a Confidential Reliable Informant ("CRI") who told her that he or she was aware of a person known as "Boleg" or "Bo" who was

---

[1] Brown did not move to suppress the search of his person based on a separate March 19, 2009 search warrant (see Government Ex. 3) in his memorandum of law. Further, Brown's counsel represented at the hearing that no evidence was obtained from Brown by virtue of this search warrant. As such, the Court will not address the propriety of the search warrant.

selling crack cocaine in the Minneapolis area. The CRI also provided that Bo works in tandem with an individual known by the CRI as "Bird." Deputy Donarski stated that the CRI had worked under the direction and control of law enforcement intermittently over a period of six years, had conducted numerous controlled buys, and the information provided by the CRI had led to the arrest of numerous individuals and the seizure of contraband.

- Deputy Donarski showed the CRI a booking photograph of Fred Dee Taylor and the CRI was able to identify the individual as the person he or she knew as "Boleg."

- Deputy Donarski also showed a Minnesota Department of Motor Vehicles Driver's license photo of Brown and the CRI was able to positively identify Brown as the person the CRI knew to be "Bird." Defendant's driver's license listed his address as the Minneapolis residence at issue in the March 19 search warrant.

- Within 72 hours of seeking the search warrant, Deputy Donarski stated that she met with the CRI to conduct a controlled purchase of crack cocaine from Fred Taylor. Under Deputy Donarski's direction and control, the CRI contacted Taylor and arranged to meet with him to exchange money for crack cocaine. The CRI was patted down for money and contraband with negative results, and the CRI was given a prerecorded amount of buy fund money.

- Under constant surveillance from law enforcement, the CRI went to the prearranged meet location where Taylor had advised the CRI to go. The CRI was observed entering the front passenger seat of a white van with the Minnesota license plate PPK 320. A few moments later the CRI was observed exiting the white van. The CRI remained under constant surveillance by law enforcement until the CRI was able to again meet with Deputy Donarski.

- The CRI turned over a quantity of suspected crack cocaine to Deputy Donarski. The CRI indicated that he or she had purchased the crack cocaine from "Bird," who was the driver of the white van. The substance was field tested positive for the presence of cocaine.

- Surveillance followed the van after the controlled buy directly back to the Minneapolis residence at issue in the March 19 search warrant. Surveillance officers observed the driver of the van exit, retrieve the mail from the mailbox and enter the front door of the Minneapolis residence.

4

- Deputy Donarski checked a database used by law enforcement and discovered that Brown is currently living at the Minneapolis residence and had been living there since September of 2008.

See Government Ex. 1.

On March 25, 2009, officers executed the March 19, 2009 search warrant at the Minneapolis residence to search for documents and proceeds related to the distribution of narcotics. At that time, they discovered what they believed to be crack cocaine in plain view on the kitchen counter of the residence. See Government Ex. 2. Law enforcement then applied for and received a search warrant for the Minneapolis residence. The accompanying affidavit to this March 25 search warrant contained the same information as the affidavit attached to the March 19, 2009 search warrant, and also added the officers' observations of drugs inside Brown's residence during the execution of the March 19, 2009 search warrant. Id.

## III. ANALYSIS

Ordinarily, searches pursuant to a warrant are reviewed to determine if there was probable cause for the search in the search warrant application and affidavit. Illinois v. Gates, 462 U.S. 213, 236 (1983). "Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Fladten, 230 F.3d 1083, 1085 (8th Cir. 2000).

The task of a court issuing a search warrant is "simply to make a practical, common sense decision whether, given all the circumstances set forth in the affidavit

. . . including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." Gates, 462 U.S. at 238. In reviewing this decision of the issuing court, the duty of the reviewing court is simply to ensure that the court had a substantial basis for concluding that probable cause existed. Id. at 238-39 (citation omitted); see also United States v. LaMorie, 100 F.3d 547, 552 (8th Cir. 1996) (citation omitted) ("Our duty as the reviewing court is to ensure that the issuing judge had a 'substantial basis' for concluding that probable cause existed, and we owe substantial deference to the determination of probable cause by the issuing judge."). As to what this Court should consider when reviewing a search warrant for probable cause, "[w]hen the [issuing judge] relied solely on the affidavit presented to him, 'only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause.'" United States v. Solomon, 432 F.3d 824, 827 (8th Cir. 2005) (citing United States v Etheridge, 165 F.3d 655, 656 (8th Cir. 1999), quoting United States v. Gladney, 48 F.3d 309, 312 (8th Cir. 1995)).

The thrust of Brown's argument was that the March 19, 2009 search warrant affidavit lacked any detail that would lead a reasonable person to reach any solid conclusions about what might be discovered in the Minneapolis residence, as the only nexus to the residence provided in the affidavit was that Brown lived there, and he was involved in a single drug transaction at some other unidentified location within the preceding 72 hours. See Def.'s Mem. at p. 3. Brown asserted that there was nothing

6

in the affidavit to support the proposition that Brown was ever seen or known to have kept contraband at the Minneapolis residence, and as such, such "a supposition was pure conjecture based on no facts whatsoever." Id. at p. 4. Brown also noted that this warrant was based on a single transaction at an "off site" location, and that the CRI thought he or she was going to be getting the drugs from Taylor, who did not appear, thereby making the connection to the Minneapolis residence all the more tenuous. Id.

The Government countered that the affidavit contained sufficient probable cause to believe that the Minneapolis residence would contain money related to the distribution of narcotics based on the information provided by the CRI that Brown was in the business of selling crack cocaine, police had observed the controlled buy between the CRI and Brown using prerecorded police funds, and thereafter, Brown went directly to the Minneapolis residence, presumably carrying the buy money. See Government's Response to Defendant's Memorandum in Support of Motion to Suppress Evidence at pp. 2-3.

The Court concludes that the contents of the affidavit accompanying the March 19, 2009 search warrant provided probable cause for the search of the Minneapolis residence. Specifically, this Court finds that a reasonable person could conclude that monies to show profit from the sale of controlled substance would be found at the Minneapolis residence. Law enforcement officers had information from a CRI that "Bird" was engaged in trafficking narcotics. Law enforcement also observed a controlled buy between the CRI and Brown in which the CRI exchanged money for

narcotics with the driver. Having just completed the controlled buy, the driver (Brown) was then observed by law enforcement officers going directly to and enter the Minneapolis residence. Officers also confirmed that Brown resided at the Minneapolis residence. In short, the affidavit connected the sale of narcotics to Brown, which included his receipt of prerecorded buy funds, and Brown to the residence. Therefore, the warrant sufficiently connects the residence to money related to the distribution of narcotics.[2] See generally, United States v. Carpenter, 341 F. 3d 666, 671 (8th Cir. 2003) ("As a matter of common sense, it is logical to infer that someone in possession of valuable contraband would store that contraband in a safe, accessible location such as his or her residence.").

Having concluded that the search warrant leading to law enforcement officer's first entry into the Minneapolis residence was based on probable cause, the Court also finds that the issuance of the second search warrant for the residence (Government Ex. 3), and the narcotics seized as a result of that search, are not "fruits of the poisonous tree." The second search warrant, like the first search warrant, was supported by probable cause.

---

[2] As this Court has determined that there was probable cause to support the request to search for the proceeds from narcotics distribution, the Court need not address whether there was sufficient probable cause in the supporting affidavit to the March 19, 2009 search warrant to support a request for the balance of the items sought by the warrant (e.g., documents, records, cell phones, computers, videotapes and the like).

Accordingly, for all of the reasons stated above, Brown's motion to suppress evidence should be denied.

## **RECOMMENDATION**

For the reasons set forth above and based on all the files, records, and proceedings herein,

IT IS RECOMMENDED that:

1. Defendant's Motion to Suppress Evidence Obtained as a Result of Search and Seizure [Docket No. 24] be **DENIED**; and

2. Defendant's Motion to Suppress Statements, Admissions and Answers [Docket No. 25] is **WITHDRAWN** based on the representation of defendant's counsel at the pretrial hearing on the underlying motions.

Dated: June 8, 2009

s/ *Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

Under D.Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 25, 2009**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this Rules shall be limited to 3500 words. A judge shall make a de novo determination of those portions to which objection is made. This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendations, the party making the objections shall timely order and file a complete transcript of the hearing on or before **June 25, 2009**.